UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JILLIAN PARKER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DENNY'S, INC.; and DOE DEFENDANTS 1-10.<br><br>Defendants. | Civil Action No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jillian Parker ("Plaintiff" or "Parker") on behalf of herself and all others similarly situated, alleges as follows:

**INTRODUCTION**

1.      This is a class and collective action brought on behalf of "Tipped Employees" who work or have worked at restaurants operating under the trade name "Denny's" that are owned, operated and/or otherwise managed or controlled Defendant Denny's Inc. ("Denny's" or "Defendant"), and who have been subject to the unlawful practices detailed herein.

2.      Defendant owns and operates a chain of Denny's restaurants which are the subject of this lawsuit.

3.      Defendant employs individuals in a tipped capacity, namely "servers" ("waiters and "waitresses") (collectively, "Tipped Employees"), who are and/or were subjected to Defendant's unlawful pay practices described herein.  As Tipped Employees, these individuals were primarily responsible for operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers were done eating/drinking.

4.      Upon information and belief, Denny's utilized the same employment policies at each of its restaurants, including the compensation of Tipped Employees.

5.      Where permitted by state law, Defendant has a policy or practice of paying its employee servers sub-minimum hourly wages under the tip-credit provisions of the FLSA.

6.      As explained in detail below, Defendant systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") and Massachusetts Minimum Wage Statute, M.G.L. c. 151, §§ 1 and 7, and applicable Massachusetts rules and regulations, ("Mass. State Law"), by, among other things, improperly applying a "tip credit" against the wages paid to its employees and thereby paying them less than the full minimum wage.

7.      Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is *not* permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employees' tipped occupation (*i.e.*, "dual jobs"); or (3) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek.

8.      Consequently, in this action, Plaintiff seeks remuneration for herself and all other similarly situated current and former Tipped Employees who have not received all the wages to which they are entitled. Plaintiff also seeks statutory damages, liquidated damages, attorneys' fees and costs, and any and all other relief that the Court deems just and proper, as provided for by law.

## SUMMARY OF CLAIMS

9.      Plaintiff brings this action on behalf of herself and all other similarly situated individuals who have worked as "Tipped Employees" for Defendant and have not received all compensation to which they are entitled, as described below.

10.     Specifically, Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the FLSA.

11.     Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who have worked for Defendant in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

12.     In addition, pursuant to Fed. R. Civ. P. 23, Plaintiff Parker brings this action as a state-wide class action to recover unpaid wages pursuant to Mass. State Law.

13.     Specifically, Plaintiff Parker brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who have worked for Defendant in the Commonwealth of Massachusetts during the statutory period covered by this Complaint (the "MA Class").

14.     The Collective Class and the MA Class are hereafter collectively referred to as the "Classes."

15.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendant for hours worked for which Defendant failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law, (ii) entitled to unpaid minimum wages from Defendant for hours worked where Defendant required them to perform unrelated tasks to their job as servers and/or excessive related, but

untipped tasks, for which they were improperly paid a sub-minimum wage directly by Defendant, and (iii) entitled to liquidated damages pursuant to the FLSA.

16.     Plaintiff alleges on behalf of the MA Class that Defendant violated Mass. State Law by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.  In addition, Defendant also violated Mass. State Law by failing to pay the MA Class members the full minimum wage for time spent performing non-tip generating work.

## **PARTIES**

17.     Plaintiff Jillian Parker ("Parker") is a resident of the Commonwealth of Massachusetts, living in Worcester, who was employed by Defendant as a "server" at their Worcester restaurant.  While employed as a Tipped Employee, Defendant failed to compensate Plaintiff properly for all hours worked.

18.     Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action.  Her Consent To Sue form is attached hereto as Exhibit A.

19.     Plaintiff had previously opted-in to the action styled *Rafferty v. Denny's, Inc*., No. 19-cv-24706 (S.D. Fla.) on December 30, 2019.  On August 3, 2020 the *Rafferty* court denied a motion for conditional certification and, as a result, Plaintiff Parker was no longer a party plaintiff in that action.  Plaintiff's FLSA claims were tolled for the 217 days in which she was a party to the *Rafferty* action.

20.     At all material times, Plaintiff was paid by Defendant as a tipped employee under the FLSA.

21.     Defendant employed Plaintiff to perform various tipped and non-tipped duties, including, but not limited to, serving drinks and food to customers, cleaning, busing tables, washing dishes and other side work.

22.     Denny's is a Delaware corporation with its executive offices located in Spartanburg, SC.

23.     At all relevant times during the statutory period covered by this Complaint, Defendant has transacted business within the Commonwealth of Massachusetts, including within this district.

24.     Denny's is an enterprise engaged in commerce that has annual gross sales of at least $500,000.

25.     Defendant is Plaintiff's "employer," as defined by the FLSA. 29 U.S.C. § 203(d). Further, Defendant employed Tipped Employees during the period covered by this Complaint.

26.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of the Defendant.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## DEFENDANT HAS UNIFIED OPERATIONS

27.     At all material times, Defendant has operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendant performs related activities at its restaurants throughout the country by means of unified operation and

common control for a common business purpose, namely, the operation of a chain of Denny's restaurants.

28.     Defendant constitutes a unified operation because it has organized the performance of its activities so that it is an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

29.     Defendant runs each Denny's restaurant location identically, or virtually identically, and Defendant's customers can expect the same kind of customer service regardless of the location.

30.     For example, each of Defendant's restaurant locations uses the brand name "Denny's" at their respective location, offers the same basic array of products and services to the general public, utilizes the same "point of sale" ("POS") system, and has the same basic hours of operation.  Further, all restaurant locations advertise together on the same website.

31.     Defendant shares employees between restaurant locations. Indeed, Plaintiff Parker is aware of Tipped Employees going from the Worcester restaurant to another restaurant to cover staff shortages at other restaurant locations.

32.     Defendant shares common management between restaurant locations. Denny's restaurants share common human resources and payroll services.

33.     Defendant provides the same array of products and services to its customers at its Denny's restaurant locations. (*See* https://www.dennys.com/food/ last visited May 26, 2021).

34.     Defendant invites applicants to apply for its open server positions through a unified online job marketplace. The job description of "server" is identical across all of Defendant's corporate-owned restaurant locations. (*See* https://careers.dennys.com/global/en/restaurant-crew last visited May 20, 2021). Part of that job description is the requirement of "[h]elping to keep our

restaurants clean, completing side work, and organizing supplies as needed." (*See* https://careers.dennys.com/ global/en/job/DENNGLOBAL349/Server last visited May 2 0 , 2021).

35.     This chain of restaurants provides the same service product to its customers by using a set formula when conducting its business.

36.     Part of that set formula are the wage violations alleged in this complaint.

## JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

38.     Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

39.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district.

40.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

41.     The crux of the applicable FLSA and Mass. State Law provisions is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

42.     Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

43.     Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendant.

44.     Upon information and belief, all of Defendant's locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

45.     As such, upon information and belief, the employment practices complained of herein occurred at all of Defendant's locations as Defendant utilized common labor policies and practices at each of its locations.

**Denny's Business Model**

46.     Denny's is a 24-hour, round-the-clock eatery, with hundreds of corporate-owned locations across the country during the applicable class period.

47.     To minimize overhead expenses, where permitted by state law, Denny's utilizes a tip credit in the compensation of its Tipped Employees in those states.  However, while Denny's may have advised them that they would earn their compensation through tips, Denny's failed to properly inform its Tipped Employees of its intention to utilize a "tip credit" as well as comply with all the mandates of the tip credit notice requirements set forth in applicable state and federal law.

48.     Consequently, Defendant has improperly applied a "tip credit" against the wages paid to Plaintiff and the Classes.  The result of Defendant's conduct is that Tipped Employees were paid less than the mandated minimum wage.

49.     Moreover, because of the low profit margins associated with a diner that does not serve alcohol, in order to turn a profit, Denny's requires Tipped Employees to perform non-standard duties.

50.     As described herein, Tipped Employees at Denny's are asked to cover job tasks far afield from those normally associated with waiting on customers as a server at a restaurant.

51.     Consequently, Defendant violated applicable wage laws by enforcing a policy or practice of paying Tipped Employees sub-minimum, tip-credit wages even when it required those employees to perform non-tipped work that is *unrelated* to their tipped occupation (*i.e.*, "dual jobs").

52.     For example, Defendant required Plaintiff and current and former Tipped Employees to perform numerous non-tipped duties that are unrelated to their tipped occupation. This includes but is not limited to, cleaning the restaurant, cutting lemons, cleaning the monitors, running the coffee pots through with cleaning solutions (and then running through with just water), rolling silverware, and setting up/breaking down prep stations.  Notably, much of this work was performed either before or after the particular Tipped Employee had served their first/last customer, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

53.     Despite performing this unrelated non-tipped work, Defendant paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

54.     Defendant also violated applicable wage laws by enforcing a policy or practice of requiring servers to perform non-tipped work that, even if it was related to their tipped occupation, was performed for unreasonable amounts of time that were not contemporaneous to direct customer service duties and for amounts of time that exceed 20 percent of their time worked in one or more individual workweeks.

55.     Upon information and belief, Defendant did not monitor the amount of time Tipped Employees spent performing non-tipped work, nor did it instruct its Tipped Employees that they should not be spending more than 20 percent of their time performing non-tipped work.

56.     As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

**Plaintiff's Experience Working For Defendant**

57.     As set forth above, Plaintiff was employed by Defendant as a "server" in its Worcester restaurant location in Massachusetts. Plaintiff worked at this location from in or about December, 2016 through October, 2018.

58.     In addition to working at the Worcester location, Plaintiff Parker also occasionally worked at other Denny's locations prior to 2016. Indeed, she worked for the same District Manager at the Leominster, Massachusetts location as well.

59.     Plaintiff Parker was paid an hourly cash wage rate from Defendant and earned tips from customers who chose to leave a gratuity.

60.     Plaintiff Parker's hourly wage rate from Defendant was $3.75 an hour. Plaintiff does not ever recall the hourly wage being raised by Defendant above $3.75 for any day worked, irrespective of how few tips were earned or the type of work performed.

61.     Plaintiff Parker typically worked for Defendant at the Worcester restaurant on the overnight shift Thursday, Friday, and Saturday and worked the day shift on Monday, Tuesday, and Thursday.

62.     In total, Plaintiff Parker typically worked approximately thirty-five (35) hours per week.

63.     Following the birth of her daughter, Plaintiff Parker cut back her days worked and only worked the day shift on Tuesday and Thursday.

64.     Plaintiff Parker recorded her work time by logging into Defendant's timekeeping system through the point-of-sale ("POS") system.

65.     Defendant required Plaintiff Parker and other Tipped Employees to perform certain tasks in order to ensure the restaurant was prepared for its customers whenever they came in. These tasks included, among other things: wiping down chair legs and chairs; filling and cleaning the condiment caddies; filling the salt and pepper shakers; cleaning light fixtures, wiping down shelves; vacuuming and sweeping the floors; cleaning and stocking the server line; cleaning and stocking the salad bar; cleaning and stocking the dressing bar; cleaning and stocking the dessert line; cleaning the pass-through window; cutting fruits; and rolling silverware.

66.     Defendant required Plaintiff Parker and other Tipped Employees to stay after their last customer left so that they could perform certain tasks in order to ensure the restaurant was cleaned and prepared for the following day's business. These tasks included, among other things: wiping down chair legs and chairs; filling and cleaning the condiment caddies; filling the salt and pepper shakers; cleaning light fixtures; wiping down shelves; vacuuming and sweeping the floors; cleaning and stocking the server line; cleaning and stocking the salad bar; cleaning and stocking the dressing bar; cleaning and stocking the dessert line; cleaning the pass through window; cutting buckets full of fruit; rolling bins full of silverware; and making ranch dressing.

67.     Plaintiff Parker was also required to perform various non-tip generating tasks during the course of her shift ("Running Side Work").  Plaintiff estimates that approximately twenty to thirty-five percent (20-35%) of her time each shift was spent performing Running Side Work.

68.     Notably, Plaintiff Parker was never instructed to clock in under a different job code when performing non-tip generating work or when working prior to or after her customers came in/left. Indeed, to the best of Plaintiff's knowledge, Defendant did not keep track of such time separately from Plaintiff's entries into the POS system.

69.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendant's employment and/or payroll records.

70.     Notably, Plaintiff Parker was never instructed to clock in under a different job code when performing non-tip generating work or when working prior to or after her customers came in/left. Indeed, to the best of Plaintiff's knowledge, Defendant did not keep track of such time separately from Plaintiff's entries into the POS system.

71.     The precise amount of time Plaintiff recorded as working each week, upon information and belief, is maintained in Defendant's employment and/or payroll records.

### The Tip Credit Provision & Requirements

***FLSA Requirements***

72.     Rather than pay its Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendant chose to take a tip credit and pay these employees less than the applicable minimum wage.

73.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.[1]

---

[1] An employer is not relieved of its duty to pay an employee wages at least equal to the minimum wage by virtue of taking a tip credit or by virtue of the employee receiving tips from customers in an amount in excess of the applicable minimum wage. That is, an employer in the restaurant industry must pay the employee wages at least equal to the minimum wage or equal to the minimum wage less the tip credit, provided the tips claimed exceed the tip credit. Under no circumstances is the employer relieved of paying at least the minimum wage for all hours worked, regardless of how much an employee earns in tips.

74.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

75.     As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

76.     First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

77.     Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

78.     Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

79.     Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

80.     Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

81.     In short, Fact Sheet #15 effectively sets forth in plain English what is required under the regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

82.     An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken, and the employer is liable for the full minimum wage.

83.     Defendant failed to satisfy all five requirements necessary to effectuate tip credit notification.

84.     Indeed a District Court recently granted summary judgment jn favor of a plaintiff, holding there was no evidence that Denny's Inc. provided its employees with the requisite fifth piece of information. *Wintjen v. Denny's, Inc.,* No. 19-CV-00069, 2021 U.S. Dist. LEXIS 35199, **17-18 (W.D. Pa. Feb. 25, 2021).

85.     Further, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

86.     Moreover, 29 C.F.R.  § 516.28(a)(3) requires employers to notify their tipped employees in writing each time the amount claimed as a tip credit changes.  As detailed below, the Massachusetts minimum wage changed during the applicable class period and Defendant failed to notify Plaintiff and its Tipped Employees in writing of the new tip credit being claimed.

87.     As set forth herein, Defendant failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

*Massachusetts Requirements*

88.     Massachusetts mandates a higher minimum wage than is permissible under federal law.  Currently, the minimum wage in Massachusetts is $13.50 per hour.

89.     In certain circumstances, Massachusetts permits employers to claim a tip credit against a tipped employee's wages.

90.     In order to claim a tip credit, (i) the employer must inform the employee in writing of the of the provisions of M.G.L. c. 151, § 7, paragraph 3, (ii) the employee actually receives tips in an amount that, when combined with the service rate, equals or exceeds the minimum wage, and (iii) all tips are retained by the employee or are distributed through a lawful tip-pooling arrangement. 454 Mass. Code Regs. 27.03(2)(b).

91.     Below is a chart of the Massachusetts minimum wage, minimum cash wage, and maximum tip credit for the relevant time period:

| Year | MA Minimum Wage | Service Rate | Maximum Tip Credit |
|------|-----------------|--------------|--------------------|
| 2016 | $10.00 | $3.35 | $6.65 |
| 2017 | $11.00 | $3.75 | $7.25 |
| 2018 | $11.00 | $3.75 | $7.25 |
| 2019 | $11.00 | $3.75 | $7.25 |
| 2020 | $12.75 | $4.95 | $7.80 |
| 2021 | $13.50 | $5.55 | $7.95 |

*See* https://www.dol.gov/agencies/whd/state/minimum-wage/tipped (last visited May 26, 2021).

## Defendant's Failure To Comply With Applicable Wage Laws

92.     As explained above, the DOL has very specific requirements regarding what notice an employer must provide to his/her employee if that employer intends to claim a tip credit.

93.     Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendant chose to simply pay its Tipped Employees a sub-minimum wage for each hour worked as a server. In short, Defendant failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

94.     Courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip credit and must pay the employee the full minimum wage.

95.     Plaintiff Parker does not specifically recall being notified by Defendant of each of the enumerated items necessary for an employer to claim a tip credit.

96.     As set forth above, these acts constitute violations of the tip credit requirements. *See, e.g.,* Fact Sheet #15.

97.     The prerequisites to taking a tip credit from the wages of an employee, which are set forth in 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59(b), state that "an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act."

98.     Further, Plaintiff Parker also does not recall being advised in writing each time the tip credit amount Defendant claimed changed due to a change in the minimum wage amount. This constitutes a violation of 29 C.F.R. § 516.28(a)(3).

99.     In addition, Plaintiff Parker specifically recalls hearing other Tipped Employees being required to pay for cash shortages, due to, *inter alia*, customer walk outs.

100.    Plaintiff Parker also remembers having to attend a four (4) hour meeting in May one year (before the restaurant turned from franchise owned to corporate owned) and not being clocked in for this meeting.

101.    Further, Plaintiff Parker recalls occasionally giving the dishwasher $10 from her tips to clean her tables due to the restaurant being understaffed for the volume of business it had on that particular day.

102.    Each of the above instances constitutes a tip credit violation.

103.    Further, there are numerous examples of Defendant violating applicable wage and hour laws due to the nature and/or amount of side work it required Plaintiff Parker and other Tipped Employees to perform.

104.    Defendant regularly and frequently required Tipped Employees, including Plaintiff, to perform a number of non-tipped duties **unrelated** to their tipped occupations, including but not limited to: taking out trash; scrubbing walls; sweeping and mopping floors; cleaning booths; washing dishes and operating the dishtank; breaking down and cleaning the server line; ensuring the general cleanliness for the front of the house; detail cleaning throughout the restaurant; stocking stations throughout the restaurant; stocking and setting tables; stocking ice; preparing delivery orders for Uber Eats, Grub Hub and Door Dash; preparing takeout orders and online orders from Denny's.com; answering the phone; working the cash register; greeting and seating customers; preparing salads; preparing deserts, ice creams and milkshakes; cutting lemons, limes, melons, strawberries, bananas, and cucumbers; washing and stocking unsliced fruits; baking biscuits; preparing specialty drinks such as lemonades, limeades and teas; and rolling bins full of silverware.

105.     Plaintiff Parker specifically recalls having to always stock cups, as the front of the house was always short on cups and her manager told her that she should "stock as you go."

106.     Further, at least 1 to 2 times per week, Plaintiff Parker was required to wash dishes due to the restaurant being short staffed.

107.     In addition, at least once a week, Plaintiff Parker had to make ranch dressing in the back of the house.

108.     Defendant regularly and frequently required Tipped Employees, including Plaintiff, to perform a number of non-tipped duties **related** to their tipped occupation, including but not limited to: cleaning and setting tables, toasting bread, making coffee, smoothies, and milkshakes; and washing dishes or glasses. Defendant required Tipped Employees to perform such *related* non-tipped tasks more than occasionally or part of the time. Defendant required Tipped Employees to perform such *related* non-tipped tasks for unreasonable amounts of time that were not contemporaneous to direct customer service duties and for amounts of time that exceeded 20 percent of Tipped Employees' time worked in one or more individual workweeks.

109.     Plaintiff Parker estimates that in a seven (7) hour shift, she spent approximately two (2) hours performing set up and/or breakdown work for Defendant.  Plaintiff further estimates that most of these approximately two hours was spent performing breakdown work at the end of her shift.

110.     Indeed, Plaintiff Parker recalls that she performed so much side work that she once fainted at work due to exhaustion from being overworked.

111.     Defendant also failed to comply with applicable wage laws insofar as Defendant took the maximum tip credit permissible for every hour worked by its Tipped Employees, including Plaintiff, irrespective of whether its Tipped Employees (i) actually earned sufficient tips

to substantiate the tip credit claimed or (ii) whether the employees were engaged in tip generating work.

112.    Because of the above violations, Defendant owes Plaintiff and the other Tipped Employees the improperly claimed tip credit for every hour they worked and were paid a subminimum wage directly by Defendant. Thus, the amounts due and owing are significant.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

113.    Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).

114.    Plaintiff Parker also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the MA Class for claims under the Mass. State Law.

115.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the Mass. State Law may be pursued by all similarly-situated persons who do not opt-out of the MA Class pursuant to Fed. R. Civ. P. 23.

116.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendant operates multiple restaurants, there are likely hundreds, if not thousands, of individuals in each of the Classes.

117.    Defendant has acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

118.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for Defendant and were subject to the same compensation policies and practices.

119.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting only individual Class members and include, but are not limited to, the following:

(a)     whether Defendant has failed to pay the full minimum wage for each hour worked;

(b)     whether Defendant satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)     whether Defendant was precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)     whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

120.    Plaintiff will fairly and adequately protect the interests of the Classes as her interests are aligned with those of the members of the Classes.  Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

121.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

122. Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices.

123. Defendant has violated and, continues to violate, the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and a willful violation of the Mass. State Law.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class For Tip Credit Notification Violations)**

124. Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

125. At all relevant times, Defendant has had gross revenues in excess of $500,000.

126. At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

127. At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

128. Pursuant to Defendant's compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendant took a tip credit and paid Tipped Employees only the tip-credit wage.

129. Defendant has violated and, continues to violate, the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

130. Due to Defendant's FLSA violations, Plaintiff and the members of the Collective Class are entitled to recover from Defendant, compensation for unpaid wages; an additional equal

amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class For Performing**
**Unrelated Work To Their Primary Duties As A Server)**

164.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

165.    Defendant failed and/or refused to comply with the FLSA and 29 C.F.R. § 531.56(e) by requiring Plaintiff and the Collective Class in a given workweek, and during each and every workweek Plaintiff and the Collective Class were employed by Defendant, to perform non-tipped labor unrelated to their tipped occupation over the course of their regular workweek, while paying Plaintiff and the Collective Class at the tip credit rate.

166.    Defendant knew that – or acted with reckless disregard as to whether – its failure to pay Plaintiff and the Collective Class the full applicable minimum wage for time spent performing labor unrelated to their tipped occupation, would violate federal law and Defendant was aware of the FLSA minimum wage requirements during the period covered by this Complaint. As such, Defendant's conduct constitutes a willful violation of the FLSA.

167.    Plaintiff and the members of the Collective Class are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

**THIRD CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class For Performing**
**Excessive Untipped Work As A Server)**

164.    Plaintiff, on behalf of herself and the Collective Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

165. Defendant failed and/or refused to comply with the FLSA and 29 C.F.R. § 531.56(e) by requiring Plaintiff and the Collective Class in a given workweek, and during each and every workweek Plaintiff and the Collective Class were employed by Defendant, to perform non-tipped labor *related* to their tipped occupation more than "part of the time" or occasionally. Plaintiff and the Collective Class members performed such *related* non-tipped labor for unreasonable amounts of time that were not contemporaneous to their direct customer service duties and in excess of twenty percent (20%) of their regular workweek, while paying Plaintiff and the Collective Class at the tip credit rate.

166. Defendant failed and/or refused to pay Plaintiff and the Collective Class the full applicable minimum wage according to the provisions of the FLSA for time they spent performing non-tipped labor related to their tipped occupation, despite requiring them to perform such for unreasonable amounts of time that was not contemporaneous to their direct customer service duties and in excess of twenty percent (20%) of their regular workweek, for each and every workweek that Plaintiff and the members of the Collective Class were employed by Defendant, in violation of 29 U.S.C. § 206(a).

167. Defendant knew that – or acted with reckless disregard as to whether – its failure to pay Plaintiff and the Collective Class the full applicable minimum wage, without applying the tip credit, for time spent performing labor related to their tipped occupation, but in excess of 20% of any given workweek, would violate federal law, and Defendant was aware of the FLSA minimum wage requirements during the relevant time period covered by this Complaint. As such, Defendant's conduct constitutes a willful violation of the FLSA.

168. Plaintiff and the members of the Collective Class are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional

equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

## FOURTH CLAIM FOR RELIEF
## MASSACHUSETTS MINIMUM WAGE CLAIM VIOLATIONS
### (On Behalf of the MA Class)

176.    Plaintiff Parker, on behalf of herself and the MA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

177.    Defendant has been and continues to be an "employer" of Plaintiff Parker and the MA Class within the meaning of the Massachusetts minimum wage law (M.G.L. c. 151).

178.    Plaintiff Parker and the members of the MA Class were "employees" of Defendant within the meaning of Massachusetts minimum wage law (M.G.L. c. 151).

179.    Defendant failed to pay the minimum wage rate to Plaintiff Parker and the members of the MA Class for all of their work time, in violation of the Massachusetts minimum wage law (M.G.L. c. 151).

180.    Defendant's failure to pay wages owed to the Plaintiff Parker and the members of the MA Class as required by the Massachusetts minimum wage law (M.G.L. c. 151) was undertaken with either an evil motive or reckless indifference by Defendant of the rights of Plaintiff Parker and the MA Class.

## FIFTH CLAIM FOR RELIEF
## BREACH OF CONTRACT/IMPLIED CONTRACT
### (On Behalf of the MA Class)

181.    Plaintiff Parker, on behalf of herself and the MA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

182.    Defendant entered into an unambiguous and enforceable contract, whether express or implied, that required Defendant to pay Plaintiff Parker and the members of the MA Class an hourly wage for each hour worked.

183.    Defendant's implied contracts or agreements with Plaintiff Parker and the MA Class included the commitment that Defendant would comply with their obligations pursuant to G.L. c. 149 and c. 151.

184.    Defendant knowingly received the services of Plaintiff Parker and the members of the MA Class.

185.    Plaintiff Parker and the MA Class performed their obligations to work for Defendant and such performance was not gratuitous.

186.    In breach of its contract with Plaintiff Parker and the members of the MA Class, Defendant has failed to pay all wages due.

187.    As the result of Defendant's breach of their contract set forth above, Plaintiff Parker and the MA Class have incurred damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT/QUANTUM MERUIT
### (On Behalf of the MA Class)

188.    Plaintiff Parker, on behalf of herself and the MA Class, realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

189.    The actions of Defendant as set forth above constitute unjust enrichment in that Defendant benefitted by Plaintiff Parker and the MA Class engaging in work and remaining engaged for work for which a reasonable person would expect to be paid.

190.    Plaintiff Parker and the MA Class performed their obligations to work for Defendant and such performance was not gratuitous.

191.    Yet, Defendant failed to compensate Plaintiff Parker and MA Class for all of their working time at the full rate due and owing.

192.    As the result of Defendant's actions set forth above, Plaintiff Parker and the members of the MA Class have incurred damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and the MA Class respectfully requests the Court grant the following relief:

A.    Designation of this action as a collective action on behalf of the Collective Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.    Designation of the action as a class action under Fed. R. Civ. P. 23, and applicable Mass. State Law, on behalf of the MA Class;

C.    Designation of Plaintiff as representatives of the Collective Class;

D.    Designation of Plaintiff as representative of the MA Class;

E.    Designation of Plaintiff's counsel as class counsel for the Collective Class and the MA Class;

F.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and MA State Law;

G.    An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

H.    An award of unpaid minimum wages to Plaintiff and the members of the Classes;

I.    An award of liquidated damages and where applicable, treble damages, to Plaintiff and members of the Classes;

J.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

K.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the complaint.

Dated: May 27, 2021                             Respectfully submitted,

                                                By: /s/ David Pastor_____
                                                **PASTOR LAW OFFICE, LLP**
                                                David Pastor (BBO # 391000)
                                                63 Atlantic Avenue, 3d Floor
                                                Boston, MA 02110
                                                Telephone: 617-742-9700
                                                Email: dpastor@pastorlawoffice.com

                                                **THE LAW OFFICES OF SIMON &
                                                SIMON**
                                                James L. Simon
                                                5000 Rockside Road, Suite 520
                                                Independence, OH 44131
                                                Telephone: (216) 525-8890
                                                Email: james@bswages.com

                                                **CONNOLLY WELLS & GRAY, LLP**
                                                Gerald D. Wells, III
                                                Robert J. Gray
                                                101 Lindenwood Drive, Suite 225
                                                Malvern, PA 19355
                                                Telephone: 610-822-3700
                                                Facsimile: 610-822-3800
                                                gwells@cwglaw.com
                                                rgray@cwglaw.com

**CARLSON LYNCH LLP**
Edwin Kilpela
Elizabeth Pollock-Avery
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243
F: 412-231-0246
ekilpela@carlsonlynch.com
eavery@carlsonlynch.com

**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Fax: (480) 304-3805
Email: cliff@bswages.com

*Attorneys for the Plaintiff and the Proposed Classes*